UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK


In re:                            :
                                       Case #11-42390
IMAGE RENT A CAR INC.             :


                                  :
          For Chapter 7
------------------------------:
<u>Plaintiff</u>                        Adversary Case #12-01288
MESSER AS THE TRUSTEE OF THE  :
ESTATE OF IMAGE RENT A CAR,

                              :

          -against-

                              :  271 Cadman Plaza East
<u>Defendant</u>                     Brooklyn, NY  11201-1800
ZILBERMAN, et al.             :  May 14, 2013
                                 10:59:00 a.m.
------------------------------:


     TRANSCRIPT OF ADJOURNMENT of PRE-TRIAL CONFERENCE
  RE COMPLAINT BY GREGORY MESSER AGAINST SCHNEIOR ZILBERMAN,
  ET AL., AND ADVERSARY PROCEEDING OF IMAGE RENT A CAR, INC.
                         BEFORE
               JUDGE NANCY HERSHEY LORD,
          UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Trustee and      LAMONICA HERBST & MANISCALCO, LLP
Plaintiff in Adversary   BY:  JORDAN PILEVSKY, ESQ.
Proceeding:              3305 Jerusalem Avenue
                         Wantagh, New York 11793

Special Counsel to       DANIEL GERSHBURG, ESQ., PC
Trustee in adversary     100 Church Street, 8th Floor
Proceeding:              New York, New York 10007



Transcription Service:        Carole Ludwig,
                              *Transcription Services*
                              141 East Third Street #3E
                              New York, New York 10009
                              Phone:  (212) 420-0771
                              Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;

Transcript produced by transcription service.

APPEARANCES CONTINUED:

For Zilberman,          ROSENBERG MUSSO & WEINER, LLP
et al:                  BY:  BRUCE WEINER, EQ.
                        26 Court Street, Suite 2211
                        Brooklyn, New York 11242

For Digby Adler Group:  LIEBER & LIEBER, LLP
                        BY:  BARBIE LIEBER, ESQ.
                        60 E. 42nd Street
                        New York, New York 10165

## INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1  (Proceedings commence at 10:59:00 a.m.)

2          THE CLERK:   Matter number one on today's calendar

3  in the case of Image Rent A Car, Inc., in the adversary

4  proceeding Messer versus Zilberman, et al, adjourned pre-

5  trial.

6          MR. JORDAN PILEVSKY:  Good morning, Your Honor,

7  Jordan Pilevsky, Lamonica, Herbst & Maniscalco, general

8  counsel for the trustee and the plaintiff in the adversary

9  proceeding.

10         MR. DANIEL GERSHBURG:  Good morning, Your Honor,

11  Daniel Gershburg, special counsel to the trustee in the

12  adversary proceeding.

13         MR. BRUCE WEINER:  Bruce Weiner, Rosenberg, Musso

14  & Weiner, attorneys for Schneior Zilberman, Adir Group,

15  Inc., Adir Rent a Car, Adir Plaza, and Gad Sebag.

16         THE COURT:  Okay, we had, we've just, we had

17  extended discovery to the end of the month, correct?

18         MR. PIVELSKY:  That is correct, Your Honor. I

19  guess I'll just give Your Honor a brief status on what's

20  going on over here.  Since the last time that our special

21  counsel was here in Court, the parties entered into

22  discussions and negotiations for a prospective settlement

23  of the claims in this adversary proceeding. Terms were, in

24  fact, reached and memorialized and the stipulations

25  circulated then sometime in mid March, Mr. Weiner provided

1  me with his comments and then we, six weeks of a lull went

2  by, we didn't hear from the other, there's another attorney

3  representing a different one of the defendants who is not

4  here today, we did not hear from him, and then fairly

5  recently at the end of April we discovered that they were

6  demanding something which we couldn't deliver in the

7  settlement, that being they wanted another party who is the

8  largest creditor of this estate in I  believe about 90

9  percent, 98 percent of the claims of this estate to sign

10 off on mutual releases as well. We simply can't deliver

11 that, they're not a party to this litigation, they're not

12 our client. That being said, it seems like, you know, if

13 that is going to be the sticking issue we won't be able to

14 resolve this and we'd need to further extend that discovery

15 which we held basically in abeyance for the past six or

16 seven weeks while we were trying to negotiate this

17 resolution.

18         THE COURT:  So the fear, well we don't know, the

19 fear of this, the fear is that assuming the other parties

20 signed off on the settlement, that somehow or other this

21 creditor could pursue fraudulent conveyance grounds in his

22 own right after the --

23         MR. WEINER:  I don't think the problem is, no, I

24 don't think they could pursue fraudulent conveyance grounds

25 --

1          THE COURT:  I asked you if that's what they were

2    thinking, I don't know that --

3          MR. WEINER:  One, I don't think that's what they

4    were thinking, although Ms. Lieber, who's their counsel,

5    can speak to that better than I can as to what her client's

6    intentions are.  But certainly it would be our position on

7    behalf of the defendants that those issues would be

8    precluded, you know, now that there's a bankruptcy only a

9    trustee --

10         THE COURT:  Right, only a trustee, that's correct.

11         MR. WEINER: They're settled, they're settled for

12   good and binding on anyone, especially since the, that the

13   creditor is a creditor in this case and would have notice

14   of the settlement, but it's my understanding from speaking

15   to counsel that there are additional, there were additional

16   causes of action in the lawsuit in California which is what

17   precipitated the filing of the bankruptcy case in this

18   court, and those had to do with, with either copyright or

19   trademark infringement and some other things that I don't,

20   don't know a whole lot about. And it's, it's their intent

21   to continue to pursue those causes of action.

22         THE COURT:  But if they were listed --

23         MS. BARBIE LIEBER:  Your Honor --

24         THE COURT:  I'll let you talk in a minute, I'm

25   just thinking out loud and then you can tell me, but if

1  they were listed, I mean if the creditor is listed and the

2  creditor hasn't brought his own, this is an individual --

3          MR. WEINER:  No, this is not an --

4          THE COURT:  Oh, oh, I'm sorry, I got it, I got it,

5  okay --

6          MR. WEINER:  It was an individual case that was

7  getting --

8          THE COURT:  This is a corporate case.  Right,

9  okay, go it, that's what I couldn't figure out, it's a

10  corporate case. Go ahead.

11          MS. LIEBER:  Barbie Lieber from Lieber & Lieber, I

12  represent the Digby Adler Group which is also known by

13  Bandago. Prior to the bankruptcy, my client had commenced

14  trademark infringement, an action in Federal Court, against

15  a number of defendants, including the debtor and the

16  individual --

17          THE COURT:  The individual non-debtor defendant.

18          MS. LIEBER:  After, and what happened was after

19  they had worked out a settlement, the trustee had worked

20  out a settlement last minute, Mr. Weiner said, well, we'll

21  also have to have a release by my client of all of those

22  individuals defendants. And there was just absolutely no

23  way that we could do that given the very, I don't want to

24  get into the settlement amount, but given the settlement

25  and the terms, there would just be no way.  The federal

1   trademark action is very, very complex.  There are

2   allegations very --

3           THE COURT:  You represent the individual who, for

4   whom they are looking to --

5           MR. WEINER:  Yes, but only with respect to the

6   trustee's cause of action --

7           THE COURT:  Right.  But you're saying that he's

8   not agreeable to that term.

9           MR. WEINER:  As of now, I'm having a meeting with,

10  I'm having a meeting next week where --

11          THE COURT:  All right, let me, okay, let me, now

12  that I understand let me have Ms. Lieber finish.  Go ahead.

13          MS. LIEBER:  So there would have been no way that

14  we could have released thousands, hundreds and hundreds of

15  thousands of claims against the individuals, these

16  individual defendants, and we have actions literally,

17  different parts of the complaint literally say that they

18  literally took the website, the put it, you know, they used

19  our whole website and put it onto their website. They

20  literally diverted by, they have the word, they use the

21  name Bandago, which is our name, and they diverted it by

22  the click.  You know, I'm not, I'm not a trademark

23  attorney, but these allegations are very serious and they

24  are against the individuals as well, there would just be no

25  way that we could have agreed to release them and then this

1  was a last minute thing that they threw up there after

2  really months of delay and not getting back --

3         THE COURT:  So you won't, so you're prepared to

4  sign a settlement agreement, assuming you don't have to

5  release them?

6         MS. LIEBER:  I didn't have to sign the agreement,

7  but I would have, if we did not have to release the

8  individual defendants, we were willing to go ahead with

9  that agreement because as long as our rights are against

10 the individual defendants who did not file for bankruptcy.

11        THE COURT:  Okay, so your client is not a

12 defendant?

13        MR. WEINER:  No, they're not --

14        THE COURT:  Okay, they're not a party to the

15 adversary proceeding.

16        MR. WEINER:  They're not a party to the adversary

17 proceeding.

18        THE COURT:  Okay.

19        MS. LIEBER:  We represent the plaintiff, but

20 essentially we're the only --

21        THE COURT:  Okay, so your client is now saying,

22 your client is saying no deal, okay.

23        MR. WEINER:  The position of my clients is that

24 the reason why this bankruptcy was filed, and we can get

25 into whether it should have been filed and whether it was a

1  smart idea, and I didn't represent the debtor or anybody

2  until well, well into this case, was that the reason that

3  they filed this was, you know, to put an end to the

4  California litigation which they were having trouble

5  affording defending even though they believe that they

6  have, that they have defenses to that and that the

7  allegations in the California case are without merit. But,

8  again, I'm not, I'm not even qualified to make, I'm just

9  repeating what my client says, I'm not qualified to, to

10 make a determination about that.  But so that if they then

11 enter into an agreement and pay money to the trustee and

12 then still have to, you know, litigate, you know, further

13 and spend, spend more money, it may not make sense --

14        THE COURT:  Well what is the current, what is the

15 current posture of the, I mean does the California case

16 continue against everybody but the debtor or it didn't?

17        MS. LIEBER:  The, the posture was when the action

18 was commenced against the individuals and the District

19 Court said go after the individuals as well, and they

20 amended the complaint to file against the individuals,

21 because that's what they did, then they immediately the day

22 after they file for bankruptcy --

23        THE COURT:  Corporate, corporate defendant, right.

24        MS. LIEBER:  Corporation, not the individuals. And

25 honestly, we were waiting to see if a settlement before we

1   proceeded, it seemed as though --

2           THE COURT:  Okay, but there's no stay, I mean

3   there is no co-debtor stay here.

4           MR. WEINER:  No, it's a, it's a Chapter 7 case,

5   there's no --

6           THE COURT:  Right.

7           MR. WEINER:  It's a corporate case on top of it

8   and it's not a consumer debt --

9           THE COURT:  So the action, you could have been, I

10  mean doesn't your client understand that they could have

11  been pursuing this action all along?

12          MS. LIEBER:  And we will be proceeding against, we

13  will actually, now what we know that there is no settlement

14  we will want to proceed.  And there may be, the Federal

15  District Court may have, once there was a filing, he may

16  have imposed a stay to see what happened in the --

17          THE COURT:  Oh, okay.

18          MS. LIEBER:  But we will be actually, given this

19  we will probably be coming to Your Honor and seeking leave

20  jus because at this point we want to go after the

21  individuals, not the debtor, obviously --

22          THE COURT:  Well there's no stay.

23          MS. LIEBER:  Right.  Right.

24          THE COURT:  There's no leave.

25          MS. LIEBER:  Right.

1          THE COURT:  There's no stay.

2          MS. LIEBER:  We may, technically, from a technical

3    standpoint we may need you to say that --

4          THE COURT:  All right, then just educate the Judge

5    in California who knows there's no stay. There's no stay.

6          MS. LIEBER:  Right.

7          THE COURT:  So, so I guess the question, so I

8    guess the point here is, well, I guess the question,

9    dealing with the largest creditor I guess, I guess your

10   client could pony up some money outside of the, outside of

11   the settlement.

12         MS. LIEBER:  Well that is what I, I had approached

13   them and I thought that that's what we could do, but then I

14   didn't get responsive calls. And at this point, given what

15   we have seen, I mean I had to come up to speed, I mean I

16   would like this investigation, the trustee really is a

17   fiduciary to my client, represents the creditors, but

18   unfortunately my client is the only creditor essentially

19   other than a --

20         THE COURT:  But you aren't intending to, well, the

21   settlement hasn't even been noticed yet, you don't know

22   whether you would have objected to the settlement --

23         MS. LIEBER:  No, I would have, I had, we were

24   actually going to support the settlement because it didn't

25   include any, any releases of the individuals, just to at

1   least facilitate this bankruptcy. See, this whole thing has

2   been stymied by the bankruptcy filing, it should never have

3   been filed, it was a two party dispute, we should not have

4   been in here --

5            THE COURT:  But I'm suggesting to you it's not

6   really stymied by the bankruptcy because you could have

7   proceeded, they could have proceeded in California all this

8   time.

9            MS. LIEBER:  Well we will.

10            MR. WEINER:  I understand, and then I may, you

11   know, I may agree with what Ms. Lieber said about whether

12   the case should have been filed but it's here two, two

13   years later, and we're still, it's still hear. And like I

14   said, I've got, you know --

15            THE COURT:  And it sounds like the individual, it

16   sounds like your client got the benefit of a stay even

17   though there's no stay.

18            MS. LIEBER:  Right.

19            MR. WEINER:  That may be --

20            THE COURT:  So maybe somebody has to explain to

21   him that, that this is the, you know, that the free ride is

22   over.

23            MS. LIEBER:  Right, exactly, at this point we are

24   going to be proceeding.

25            MR. WEINER:  Well, like I said --

1          THE COURT:  You're very, you know, a good person

2   to do that.

3          MR. WEINER:  We're having a meeting next week,

4   Judge, and I understand, you know, I can't obviously

5   divulge what I'm going to talk about with my client, but I

6   --

7          THE COURT:  I get it.

8          MR. WEINER:  But on the other hand, it wouldn't be

9   too difficult to figure out.

10         THE COURT:  So, you're caught between a rock and a

11  hard place.

12         MR. PILEVSKY:  Your Honor, procedurally, if Mr.

13  Weiner could get all the defendants to, onboard with the

14  settlement that was already agreed upon, and obviously --

15         THE COURT:  Logically, the other -- I mean the

16  other point is that Ms. Lieber's client's going to be

17  looking at, at the math. So it seems to me that the more

18  money that the estate has to expend in admin claims to

19  litigate this --

20         MS. LIEBER:  Right.

21         THE COURT:  To come to whatever they're going to

22  come to, is going to mean less money for the creditor, 90

23  percent of the claims in this case, and the less money that

24  the creditor gets, the more money they're now going to be

25  looking for towards your client. So another reason why it

1  might not make sense to, to litigate, because ever dollar

2  that they spend, you know, comes ahead of everybody.

3          MS. LIEBER:  That's very wise, and, in fact,

4  that's why I actually, with all due respect to you, I

5  actually approached Mr. Weiner directly and I said exactly

6  that. I said, you know, why don't we see if we can do two

7  contemporaneous settlements so that we can avoid that extra

8  layer. So I'm, I totally agree with you, but at this point

9  I think --

10          THE COURT:  But then again, you know, you have the

11  trustee in the situation of having to analyze whether, you

12  know, whether -- how do you feel about them settling on a

13  separate track with respect to that?

14          MR. PIVELSKY:  We're comfortable with the

15  settlement that we've already agreed upon thus far --

16          THE COURT:  As long as it doesn't reduce what

17  they're going to pay you --

18          MS. LIEBER:  Oh, no, no, no, no, no.

19          THE COURT:  Okay.

20          MR. PIVELSKY:  If there's a new number that's

21  increased that makes creditor's counsel comfortable,

22  obviously we're all amenable to --

23          THE COURT:  Right, but a lower, a lower number

24  because he has to now pay them on a separate track is not

25  going to fly.

1          MR. PIVELSKY:  I'd have to speak to the trustee

2   about that, but right now, in terms of --

3          THE COURT:  It doesn't make sense though because

4   they have 90 percent of it.

5          MR. WEINER:  Ultimately, I think if there were to

6   be such a settlement, and I don't know whether there can

7   be, but if there were to be such a settlement, the, the

8   number that would flow through to Ms. Lieber's client is,

9   is the number, and I don't think it would necessarily make

10  a difference how much of it goes through the bankruptcy

11  estate as long as the trustee and his professionals, and

12  there's something for the small amount of other creditors

13  in the case, is taken care of.  I don't think that that's a

14  problem. But we're not, we're not there yet, we're --

15          THE COURT:  So, does it, does it make sense, does

16  it make sense for you to hold off on doing anything until

17  prior to the 31st and if you don't have a deal you could,

18  you could file a, could you settle an order for me to amend

19  the discovery or you want to amend it now?

20          MR. PIVELSKY:  I'd prefer to, just not to

21  prejudice the trustee I'd prefer to extend discovery by

22  another sixty days because we essentially held off on

23  discovery for the past six, seven weeks while we were

24  negotiating the settlement.

25          MR. WEINER:  Judge, we have no objection to that.

1          THE COURT:  All right --

2          MR. PIVELSKY:  And also understanding that

3   pursuant to Your Honor's order at the end of, at the end of

4   April, the defendant's or the debtor's required to turn

5   over a vehicle to the trustee by tomorrow at twelve o'clock

6   with other documents, as well, which will facilitate our

7   discovery. I have not received any response --

8          THE COURT:  That's a separate, that was a

9   separate, that was a separate motion, right?

10          MR. WEINER:  That was a separate motion. I'm told

11   the vehicle is long disposed of and is no longer, you know,

12   in existence.

13          MR. GERSHBURG: Your Honor had signed an order on

14   April 30th directing the parties to actually give the

15   vehicle over to us, as well as books and records. And we

16   were discussing this, actually we were discussing the order

17   while we were settling, they had full knowledge of that

18   during that same period of time, this is the first that

19   we've heard that the vehicle is, had been disposed of in

20   any way --

21          THE COURT:  Well if you don't get what you're

22   supposed to get you can, you know, move to hold, hold the

23   party in contempt for failure to abide by my order and the

24   other side will respond.

25          MR. WEINER:  I'm, listen, I'm told the vehicle was

1  disposed of before the bankruptcy was filed, so it never

2  existed.

3          THE COURT:  But wait a minute, when the motion was

4  made what was the, I don't have that in front of me, what

5  was the response?

6          MR. WEINER:  The motion was directed at the

7  debtor, I don't represent the debtor.

8          THE COURT:  Right.

9          MR. WEINER:  And I know debtor's counsel appeared

10 at the motion and put in some sort of papers, you know --

11         THE COURT:  I'd have to go look and see what it

12 was but I don't recall.

13         MR. GERSHBURG:  Your Honor, to my recollection

14 there was absolutely no response, whatsoever, stating that

15 they didn't have this vehicle.

16         THE COURT:  Well, again, that's not, the party's

17 not, nobody is here for --

18         MR. GERSHBURG:  Right.

19         THE COURT:  For the Chapter 7 corporate debtor

20 that really doesn't exist anyway anymore.

21         MS. LIEBER:  Right.

22         THE COURT:  So, you know, if you --

23         MR. WEINER:  I mean, you know, the only other, you

24 know, I will try to check with the, the parties involved. I

25 know that they're not doing anything tomorrow, let alone

1  turning over a vehicle.

2           THE COURT:  Well they're not doing anything from

3  sundown tonight, right?

4           MR. WEINER:  Exactly.

5           MR. GERSHBURG:  Your Honor, the other thing that I

6  would simply bring up is, aside from this vehicle, the

7  debtors were --

8           THE COURT:  Either are you, right?  He's not

9  either.  Okay, go ahead.

10          MR. GERSHBURG:  The other thing I would bring up

11 other than the vehicle is that the debtors were supposed to

12 produce all kinds of books and records that are in their

13 possession, we haven't received --

14          THE COURT:  When was the date by which they're

15 supposed to comply?

16          MR. GERSHBURG:  May 15th, tomorrow, by noon.

17          THE COURT:  Okay, well you're going to, you have

18 your rights to come back to me.

19          MR. GERSHBURG:  Certainly.

20          THE COURT:  I'm not going to do anything today

21 about that.

22          MR. GERSHBURG:  I know.

23          THE COURT:  Okay, I know you know.  All right,

24 okay, so we want to, you want sixty days, push everything,

25 push to sixty days?

1          MR. PIVELSKY:  Please, Your Honor.

2          MR. GERSHBURG:  Please.

3          MR. PIVELSKY:  Sixty days out from the May --

4          THE COURT:  So now we're going to do a new, an

5 amended pre-trial, it's going to make discovery, fact and

6 expert discovery no later than July 31st, joint pre-trial

7 memorandum, well, all right, let's get around the holiday,

8 September 5th, which would mean a dispositive motion by, I

9 mean that doesn't, just as a week before I'm just saying

10 for your own edification would be the 29th, that doesn't go

11 in, it's just says 7 days before.  Parties shall serve and

12 file -- oh, I did have it in there, any dispositive motions

13 no later than, so now it would move to August 29th.  Okay.

14 All right, and I will, let's adjourn the pre-trial, but I

15 assume I might see you back on this other thing.

16          MS. LIEBER:  How far --

17          THE COURT:  Well, I mean normally we could go out,

18 the reason I guess we were keeping these, these, continuing

19 to do this is because we thought there might be some

20 settlement and we were trying to, you know, keep, keep the

21 pressure on, I guess, is that kind of the idea here?  I

22 mean you want to know where you, you want to know where

23 you, I mean if you don't have this deal you're just going

24 to proceed to discovery.

25          MR. PIVELSKY:  Correct, Your Honor.

1              THE COURT:  All right, so when do you want to be

2    back here, whatever you want?

3              MR. GERSHBURG:  June.

4              MR. PIVELSKY:  End of June, early July?

5              THE CLERK:  We have June 27th at 11:30.

6              THE COURT:  Okay.  June 27th at 11:30.  All right.

7              (Proceedings concluded at 11:18:59 a.m.)

8

9              I, Carole Ludwig, court approved transcriber,

10   certify that the foregoing is a correct transcript from the

11   official electronic sound recording of the proceedings in

12   the above-entitled matter.

13

14   _____        _____

15   CAROLE LUDWIG                           May 16, 2013

16

17

18

19

20

21

22

23

24

25